UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF FLORIDA
TAMPA DIVISION

JOEL E. CHANDLER, DEBORAH S. CHANDLER,
and ROBERT S. CHANDLER, individually, and on
behalf of all others similarly situated,

    Plaintiffs,

v.                                    CASE NO: 8:11-cv-262-T-26EAJ

STEPHANIE C. KOPELOUSOS, in her official
capacity as Secretary of the Florida Department of
Transportation, FANEUIL, INC., STEPHANIE C.
KOPELOUSOS, KEVIN J. THIBAULT,
RICHARD D. NELSON, RON RUSSO,
BILL GRIMM, DENISE GARCIA, MILISSA
BURGER, and FRANKIE A. COOK,

    Defendants.
_____/

**O R D E R**

Before the Court are the Motions to Dismiss filed by Defendants Stephanie C. Kopelousos, in her official and individual capacities, Milissa Burger, Frankie A. Cook, Denise Garcia, Bill Grimm, Richard D. Nelson, Ron Russo, and Kevin J. Thibault, in their individual capacities (Dkt. 26), Plaintiffs' Response (Dkt. 32), the Motion to Dismiss filed by Defendant Faneuil, Inc. (Dkt. 27), and Plaintiffs' Response. (Dkt. 33). After careful consideration of the allegations of the class action Complaint (Dkt. 1), the

Court concludes that the motions should be denied, with the exception of part of one count.

## ALLEGATIONS OF THE COMPLAINT

The Plaintiffs seek to represent a class of motorists who have been detained by toll collectors on the roadways operated by the Florida Department of Transportation (FDOT).  The motorists have been detained after tendering sufficient cash to pay the toll, but more than the amount required, pursuant to a "policy" of detainment if a denomination of $50 or higher is used to pay the toll.  The FDOT, however, authorized the toll collectors to detain motorists for denominations as low as $5.  The motorists and passengers are permitted to leave only after they provide the toll facility personnel with personal information such as vehicle make, model, color, tag number, state of issuance, and driver's license.  Additional information of the occupants' race, gender, and relative age are recorded on a Bill Detection Report and retained by FDOT.  These bill detection procedures were temporarily ceased on July 22, 2010.

The various individual Defendants are employed in some capacity either directly by FDOT or through the FDOT unit known as Florida's Turnpike Enterprise (FTE). Defendant corporation Faneuil, Inc. (Faneuil) provides the toll facility personnel, or toll operators.  The toll operators are subordinate to FDOT's designated representatives.  The FDOT and Faneuil have engaged in the "practice of detaining motorists and their passengers" until the motorists provide the personal information in exchange for their

release.  The only individual Defendant sued in her official capacity is Stephanie C. Kopelousos, the Secretary of FDOT.

In the four-count complaint, Stephanie Kopelousos is sued in her official capacity in count I only, along with all other Defendants, for a prospective injunction.  Counts II and III seek relief for civil rights violations under the Fourth and Fourteenth Amendments pursuant to 42 U.S.C. § 1983 against Faneuil and the individual Defendants respectively.  Count IV states a claim under state law for false imprisonment against Faneuil and the individual Defendants.  Defendant Faneuil seeks to dismiss the complaint based on four grounds: (1) the complaint is replete with conclusions rather than specific facts contrary to the standard set forth in Ashcroft v. Iqbal, 129 S.Ct. 1937 (2009); (2) count I fails to allege standing; (3) count II fails to allege that Faneuil acted under color of state law, improperly alleges that Faneuil is liable under the theory of respondeat superior, and fails to allege a violation of the Fourth or Fourteenth Amendments; and (4) count IV lacks a factual basis and a basis for vicarious liability.  The remaining Defendants seek to dismiss counts I, III and IV of the complaint for the following reasons: (1) the absence of any basis for injunctive relief; (2) Eleventh Amendment immunity; (3) qualified immunity; and (4) sovereign immunity.

## PLEADING STANDARD

All factual allegations of the complaint are considered true and all inferences from those facts will be construed in the light most favorable to the plaintiff.  See Speaker v.

U.S. Dep't of Health & Human Servs. Ctrs. of Disease Control & Prevention, 623 F.3d 1371, 1379 (11th Cir. 2010). The complaint must allege "only enough facts to state a claim to relief that is plausible on its face." Bell Atlantic Corp. v. Twombly, 550 U.S. 544, 570, 127 S.Ct. 1955, 1974, 167 L.Ed.2d 929 (2007). The factual allegations must be "enough to raise a right to relief above the speculative level." Sinaltrainal v. Coca-Cola Co., 578 F.3d 1252, 1260-61 (11th Cir. 2009) (quoting Twombly, 550 U.S. at 545). "Determining whether a complaint states a plausible claim for relief [is] a context-specific task that requires the reviewing court to draw on its judicial experience and common sense." Ashcroft, 129 S.Ct. at 1950.

A claim for violation of civil rights brought pursuant to 42 U.S.C. § 1983 is no longer subject to any "heightened pleading requirements," contrary to some of the Defendants' urging. See Randall v. Scott, 610 F.3d 701, 707-10 (11th Cir. 2010).[1] Qualified immunity must appear on the face of the complaint to dismiss the action. Powell v. Georgia Dep't of Human Resources, 114 F.3d 1074, 1077 (11th Cir. 1997).

---

[1] See also Nettles, Jr. v. City of Leesburg Police Dep't, No. 2010 WL 5382914, at *5 (11th Cir. Dec. 22, 2010) (unpublished opinion) (citing Randall as the case that acknowledged Ashcroft v. Iqbal, ___U.S.___, 129 S.Ct. 1937, 173 L.Ed.2d 868 (2009), overruled heightened pleading standard in 42 U.S.C. § 1983 cases involving qualified immunity).

## PROSPECTIVE INJUNCTION
(Count I)

In Count I, Plaintiffs seek a prospective injunction to enjoin each and every Defendant from detaining motorists and forcing them to provide personal information in exchange for their freedom to proceed through the toll after paying. Defendants assert that Plaintiffs have no standing because this practice ceased on July 22, 2010, as alleged in the complaint. Defendants rely on the premise that the cessation of allegedly illegal conduct renders the case moot, citing City of Los Angeles v. Lyons, 461 U.S. 95, 101, 103 S.Ct. 1660, 75 L.Ed.2d 675 (1981). Plaintiffs assert that the cessation of the practice in this case was temporary only and may be reactivated at any time; hence, the prospective injunction is necessary. This contention is supported by the contemporaneous allegation in the complaint that "[i]t is believed that Defendants will continue the widespread practice of unlawful detentions and will continue to force vehicle occupants to provide personal information in exchange for their releases."[2] Additionally, Plaintiffs allege that there is no adequate remedy at law and that the class "will continue to suffer irreparable injury from the Defendants' policies, practices, customs and usages."[3]

To declare a case moot based on voluntary cessation, a defendant must demonstrate that (1) "there is no reasonable expectation that the alleged violation will recur," and (2) "interim relief or events have completely and irrevocably eradicated the

---

[2] See docket 1 at para. 42.

[3] See docket 1 at para. 43.

effects of the alleged violation." Seay Outdoor Adver., Inc. v. City of Mary Esther, Fla., 397 F.3d 943, 946-947 (11th Cir. 2005) (quoting County of Los Angeles v. Davis, 440 U.S. 625, 631, 99 S.Ct. 1379, 1383, 59 L.Ed.2d 642 (1979)). "The 'heavy burden of persua[ding]' the court that the challenged conduct cannot reasonably be expected to start up again lies with the party asserting mootness." Friends of the Earth, Inc. v. Laidlaw Environmental Servs. (TOC), Inc., 528 U.S. 167, 189, 120 S.Ct. 693, 145 L.Ed.2d 610 (2000). Particularly where the abandonment of the practice at issue may be "timed to anticipate suit," the courts must be wary of the circumstances. See U.S. v. W.T. Grant Co., 345 U.S. 629, 632 n. 5, 73 S.Ct. 894, 97 L.Ed. 1303 (1953) (quoting U.S. v. Oregon State Med. Soc'y, 343 U.S. 326, 333, 72 S.Ct. 690, 695, 96 L.Ed. 978 (1952)).

When a governmental entity abandons an allegedly illegal practice, as here, "considerably more leeway" is given under the presumption that the governmental official or entity will be "unlikely to resume illegal activities." Coral Springs St. Sys., Inc. v. City of Sunrise, 371 F.3d 1320, 1328-29 (11th Cir. 2004). In the context of legislative action as the repeal of a statute, unlike the instant case, many times the courts will consider a challenge to its constitutionality moot. Coral Springs, 371 F.3d at 1329. Even an exception applies to this general rule when a substantial likelihood exists that the statutory language will be reenacted. Id.. Apart from legislative action, the challenged conduct or practice of other governmental entities may be less likely to remain abandoned. See Burns v. PA Dep't of Corr., 544 F.3d 279, 284 (3d Cir. 2008) (finding Department of

Correction's promise not to seize funds in the future from an inmate's account made after the disciplinary hearing raises skepticism about its intent to manipulate jurisdiction in favor of mootness); Harrell v. The Florida Bar, 608 F.3d 1241, 1265-66 (11th Cir. 2010) (holding that a rebuttable presumption applies in favor of government actors, subject to a finding that the cessation is sufficiently "unambiguous").

To determine whether the offending governmental conduct will not likely reoccur, three factors are analyzed to resolve mootness: (1) whether cessation of the challenged action was "unambiguous;" (2) whether the cessation was the product of "substantial deliberation" or merely an attempt to manipulate jurisdiction; and (3) whether a new policy has been "consistently applied" or new course of conduct has been adhered to after voluntary cessation. National Ass'n of Bds. of Pharmacy v. Board of Regents of the Univ. Sys. of Ga., 633 F.3d 1297 (11th Cir. 2011). The courts often look to the timing of the cessation and the content of the decision to terminate the activity or practice in resolving the "unambiguous" and "substantial deliberation" factors. Id. at 1265-66.

Defendants attach a memorandum dated July 22, 2010, to their motion to dismiss, to which Plaintiffs object. Plaintiffs also attach documents to their response. In deciding a motion to dismiss filed pursuant to Federal Rule of Civil Procedure 12(b)(6),[4] the court may not consider matters outside the four corners of the complaint without converting the

---

[4] The correct method to challenge justiciability based on mootness is by Rule 12(b)(1). See Sheely v. MRI Radiology Network, P.A., 505 F.3d 1173, 1182 (11th Cir. 2007) (citations omitted).

motion to dismiss to a motion for summary judgment. Caravello v. American Airlines, Inc., 315 F.Supp.2d 1346, 1348 (S.D. Fla. 2004). A document attached to a motion to dismiss, however, may be considered by the court in ruling on a motion filed pursuant to Rule 12(b)(6), without conversion to a motion for summary judgment, provided the document is "(1) central to the plaintiff's claim; and (2) undisputed." Horsley v. Feldt, 304 F.3d 1125, 1134 (11th Cir. 2002) (citing Harris v. Ivax Corp., 182 F.3d 799, 802 n.2 (11th Cir. 1999)); Brooks v. Blue Cross & Blue Shield of Fla., Inc., 116 F.3d 1364, 1369 (11th Cir. 1997).[5] "Undisputed" means that the authenticity of the document is not contested. Horsley, 304 F.3d at 1134.[6]

Looking at the attachments to the motion and the response in making the determination regarding mootness, the Court reviews the materials in view of the three factors espoused above in National Ass'n. None of the documents establish that the decision to stop the practice of detaining motorists was an "unambiguous" decision to cease the practice forever. Many of the intraoffice written communications of July and August 2010 describe the termination as temporary. There was no substantial deliberation in the rather quick decision to stop the practice. It is clear that a detained motorist complained to FDOT about the practice, and the practice was immediately

---

[5] Presumably, using the same rationale, exhibits attached to a response to a motion to dismiss may also be reviewed.

[6] The parties have not informed this Court whether they dispute the authenticity of the attachments.

stopped to research whether the practice was unlawful. Ceasing to conduct research does militate against a finding that the decision to stop was "well-reasoned," but instead, hasty and in anticipation of legal action. That FDOT was secretive about its internal decision to halt the practice suggests that it was merely to further consider the continuation of the practice and not to unequivocally terminate the practice once and for all. With respect to the third factor, there is no information regarding whether any new procedure has been adhered to or consistently applied. Thus, based on the findings that the cessation was neither "unambiguous" nor the product of "substantial deliberation," and that there is no indication that a new course of conduct is being "consistently applied," this action is not moot.

## ELEVENTH AMENDMENT IMMUNITY
### (Count I)

The only claim against the state is found in count I for a prospective injunction against Stephanie C. Kopelousos in her official capacity as Secretary of FDOT. The well-known exception to the state's sovereign immunity prohibiting private individuals from suing the state in federal court, permits federal courts to grant "prospective injunctive relief to prevent a continuing violation of federal law." National Ass'n, 633 F.3d at 1308 (citing Green v. Mansour, 474 U.S. 64, 106 S.Ct. 423, 426, 88 L.Ed.2d 371 (1985), relying on Ex Parte Young, 209 U.S. 123, 28 S.Ct. 441, 52 L.Ed. 714 (1908)). Based on

the above analysis regarding mootness, the Court finds that the one official capacity claim does not run afoul of Eleventh Amendment immunity.[7]

## QUALIFIED IMMUNITY
(Counts II & III)

Public officials acting in the course and scope of their employment are shielded from suit against them in their individual capacities if while performing discretionary acts, they commit torts and any such torts do not violate a clearly established statutory or constitutional right. See Lee v. Ferraro, 284 F.3d 1188, 1193-94 (11th Cir. 2002) (citing Harlow v. Fitzgerald, 457 U.S. 800, 818, 102 S.Ct. 2727, 2738, 73 L.Ed.2d 396 (1982)). The initial burden rests with the public officials to establish that they were acting within the scope of their discretionary authority. See Oliver v. Fiorino, 586 F.3d 898, 905 (11th Cir. 2009) (citing McCullough v. Antolini, 559 F.3d 1201, 1205 (11th Cir. 2009)). If the officials were acting within the scope of discretionary authority, then the burden shifts to the plaintiffs to show the grant of qualified immunity is unmerited. Oliver, 586 F.3d at 905 (citing McCullough, 559 F.3d at 1205).

Only after it is shown that the officials were acting in their discretionary authority must the Plaintiffs show that a constitutional right was violated and that the illegality of the officials' actions was "clearly established" at the time of the incident. Oliver, 586

---

[7] Because the Eleventh Amendment does not bar suits against state officials in their individual capacities under 42 U.S.C. § 1983, the other such claims are permitted. See Manders v. Lee, 338 F.3d 1304, 1308 (11th Cir. 2003).

F.3d at 905 (citing Pearson v. Callahan, 555 U.S. 223, 129 S.Ct. 808, 172 L.Ed.2d 565 (2009)). These latter questions need not be answered in a particular order.[8]

Plaintiffs assert that the Defendants were not acting in the scope of their discretionary authority because "engaging in searches and seizures" is not part of the Defendants' job powers and responsibilities. See Grider v. City of Auburn, Ala., 618 F.3d 1240, 1262 n. 33 (11th Cir. 2010). Under Florida law, the FDOT is not listed as one of the state agencies that possesses discretionary police power. See Trianon Park Condo. Ass'n v. City of Hialeah, 468 So.2d 912, 919-920 (Fla. 1985). While it seems that it is not a job-related power of the FDOT employees to engage in searches and seizures of motorists, this Court will not rule out that possibility at this juncture and instead assume for purposes of the qualified immunity argument that the discretionary powers of the officials have been invoked.

Having made this assumption, the burden now shifts to the Plaintiffs to establish that their Fourth and Fourteenth Amendment constitutional rights were violated and such rights were clearly established.[9] The question to be asked is whether it would be "sufficiently clear" that a reasonable FDOT operator would understand that what he or she is doing violates that right. Oliver, 586 F.3d at 907 (citing Wilson v. Layne, 526 U.S.

---

[8] Pearson, 129 S.Ct. at 818.

[9] A reading of the complaint establishes that the motorists were detained and asked for personal information in exchange for their release—a violation of a constitutional right.

603, 615, 119 S.Ct. 1692, 143 L.Ed.2d 818 (1999)).  The precedent of the Supreme Court of the United States, the Eleventh Circuit, and the Florida Supreme Court is considered. See McClish v. Nugent, 483 F.3d 1231, 1237 (11th Cir. 2007).  Generally if a bright-line test is not delineated, qualified immunity protects the defendant.  There are, however, instances in which the conduct of the official is "so obviously" clear that it falls within the prohibitions of the Fourth Amendment.

While the Court has not found, nor the parties presented, a case on all fours, the conduct in this case violates the Fourth Amendment's guarantee against unreasonable searches and seizures which also encompasses the right to be free from arrest without probable cause.  See Von Stein v. Brescher, 904 F.2d 572, 579 (11th Cir. 1990).  There is nothing to suggest in the complaint that the motorists had been engaged in any sort of criminal conduct.  Consequently, qualified immunity is denied.

## SOVEREIGN IMMUNITY
(Count IV)

Plaintiffs concede that the individual claims brought for the state law claim of false imprisonment are prohibited by sovereign immunity.  Florida has not waived its sovereign immunity from tort suits filed in federal court.  See Terrell v. United States, 783 F.2d 1562, 1565-66 (11th Cir. 1986).

With respect to the corporate Defendant, Faneuil, the complaint is sufficient to state a cause of action for false imprisonment on the basis of respondeat superior liability.

See Montejo v. Martin Mem'l Med. Ctr., Inc., 935 So.2d 1266, 1268-69 (Fla.Dist.Ct.App. 2006).

It is therefore **ORDERED AND ADJUDGED** that the Motions to Dismiss (Dkts. 26 & 27) are **DENIED** with the exception of count IV as to some of the Defendants. Count IV is dismissed with prejudice as to the individual Defendants only. The Defendants shall file their answers and defenses to the Complaint within ten (10) days. Furthermore, pursuant to this Court's order entered May 6, 2011, at docket 36, the parties are directed to file a case management report on or before May, 20, 2011, following which the Court will schedule a preliminary pretrial conference.

**DONE AND ORDERED** at Tampa, Florida, on May 10, 2011.

s/*Richard A. Lazzara*
**RICHARD A. LAZZARA**
**UNITED STATES DISTRICT JUDGE**

**COPIES FURNISHED TO**:
Counsel of Record